**WASHINGTON COUNTY.**

October and November Term, 1883, No 148.    October 17, 1883.

# Le Moyne's Appeal.

1. A petition by a distributee to the Orphans' Court prayed that a decree, made a year and a half before, confirming the partial account of certain executors, should be set aside upon the ground of gross error in the amount of commissions charged for services. of which the petitioner had become aware since the final confirmation. *Held*, that since the petition did not allege that the accountants should have charged themselves with any item omitted from their account, and since it omitted to state any reason why the petitioner did not or could not, by the exercise of reasonable diligence, have discovered all of the errors before final confirmation, it was not error upon demurrer to dismiss the petition.

2. The petition was substantially a bill of review.

3. As a matter of right a review can be had only for error apparent on the face of the record or for new matter that has arisen since the decree.

4. It may be had *ex gratia* for new evidence as to facts discovered after decree made, which could not have been procured by the exercise of due diligence before.

Before Mercur, C. J.; Gordon, Paxson, Sterrett, Trunkey, Green, and Clark, JJ.

Appeal of John V. Le Moyne from a decree of the Orphans' Court of *Washington County*, dismissing his petition for review of the account of the executors of Dr. F. J. Le Moyne, deceased.

On March 11, 1881, Julius Le Moyne and V. Harding, executors of the estate of Dr. F. J. Le Moyne, deceased, filed their account in the register's office of Washington county, and it was subsequently confirmed by the Orphans' Court. On November 9, 1882, John V. Le Moyne, of Chicago, Illinois, filed a petition setting forth "that the petitioner is a son, and one of the heirs at law of the said F. J. Le Moyne, deceased, and is interested in the distribution of his estate; that on the 11th day of March, 1881, the executors of the last will and testament of said decedent settled in the proper office a partial account of their trust, and that said account was duly confirmed by this Court.

Since the final confirmation of said account the petitioner has become aware of gross error therein as follows:

The compensation claimed by and allowed to the execu-

[Le Moyne's Appeal.]

tors is $9,500, which is largely in excess of what they should legally and properly receive, for the following reasons :

*First.* The accountants claim and receive commissions of about five per cent upon the proceeds of real estate, to wit, $27,549 82. So far as the petitioner is informed, no extra services were rendered nor unusual expense encountered in making sales, and he is advised and believes that this charge is excessive.

*Second.* The accountants claim and receive commissions of about five per cent upon the whole amount of the inventory, to wit, $170,861 10. This charge is excessive and unreasonable, because :

1. The individual indebtedness of the executors is included in said inventory, as follows :

Indebtedness of Julius LeMoyne, . . . . . . . .$30,513 12
Indebtedness of V. Harding, . . . . . . . . . 27,240 05
Total, . . . . . . . . . . . . . . . . . .$57,762 17

Upon this sum the petitioner is advised and believes no commissions should be allowed.

2. The following items form part of the said inventory :

Indebtedness of John V. LeMoyne, . . . . . .$13,082 37
Indebtedness of Mrs. C. L. Wills, . . . . . . 6,149 15
Indebtedness of Mrs. R. L. Wade, . . . . . . 495 40
Bequest to Julius LeMoyne, . . . . . . . . . 583 00
Bequest to J. and M. LeMoyne, . . . . . . . 657 50
Bequest to Dr. F. LeMoyne, . . . . . . . . . 220 00
Bequest to daughters (library,). . . . . . . . 40 00

Total, . . . . . . . . . . . . . . . . . . .$21,227 42

Upon this sum the petitioner avers that the compensation allowed is excessive, for the reason that the only duty required or performed was the taking of receipts for the several amounts from the respective heirs.

3. The indebtedness of the petitioner, as set out in the inventory, is $13,082 37, being $4,532 62 with interest thereon, counted at the rate of ten *per centum* per annum, from 1st of January, 1861, to 12th November, 1879. At the legal rate of interest this indebtedness would amount to only $9,667 81, showing an excess of $3,414 56.

Upon this excess no commissions should have been allowed.

*Third.* The accountants claim credit for the sum of $16,664 18 as "uncollected and undisposed of" assets. Upon this sum, which is embraced in the inventory, no commission should have been allowed. On account of

these errors the balance for distribution is largely reduced, to the prejudice of the interests of the petitioner and other heirs.

He therefore prays,

*First.* That the decree confirming said account be lifted, and a rehearing be granted as to so much thereof as is alleged to be erroneous.

*Second.* That your Honor grant such other and further relief as justice and equity may require."

The executors filed a demurrer to the petition upon the grounds—

1. That the petitioner does not aver that error of law appears in the decree confirming said account.

2. That no new matter was alleged.

3. That nothing was averred which the petitioner could not have known before the confirmation, by using reasonable diligence.

APRIL 25, 1883.—The Court below, HART, J., filed the following opinion :

"It is now well settled that under the acts of 15 March, 1832, and 14 April, 1835, the confirmation of a partial account of an executor or administrator is a definitive decree and conclusive as to the matters contained in it, and from which an appeal will lie to the Supreme Court : Rhoads' Appeal, 3 Wr., 186 ; M'Lellan's Appeal, 26 Sm., 231.   It is, therefore, clear that the partial account settled by Dr. LeMoyne's executors on the 11th of March, 1881, was a distinct account ; not, as had been ruled under the act of 1819, an unfinished and partial settlement, which could be overhauled when the last and final account came in, possibly twenty years thereafter ; the whole series of accounts being considered and treated as a unit.   The confirmation of the account was, as I have said, a final decree ; as much so as if the account had embraced and settled the entire trust committed by the testator to his executors. From that decree of confirmation all parties interested have a right of appeal at any time within three years to the Supreme Court.   That much is undoubted.   The only question is as to the power which the Orphans' Court has to go behind its own decree, and examine into and correct alleged errors and mistakes.

Prior to the passage of the act of 13 October, 1840, Sec. 1, P. L., 1, there was no limit to the time within which a review of any of its proceedings by the Orphans' Court could be allowed.   In analogy to the rules and practice in courts of chancery, the Orphans' Court, it was held, could review and correct errors in its proceedings, if

equity and justice required, and no intervening rights of creditors, purchasers, or other third parties prevented, even after the lapse of twenty years and upward : Georges' Appeal, 2 Jones, 260. And the law is so yet, except as to accounts of executors, administrators, and guardians, to which only the 1st section of the act of 1840 applies. As to these, that is, accounts of executors, &c., the Supreme Court, in construing and applying the act of Assembly, seems to have determined that where a bill for a review is presented within five years after final confirmation, the Orphans' Court has no discretion, but must grant the review, provided the petition alleges error of law apparent on the record ; new matter, or new evidence. But, where the allegations fall short of this, then the petition is to be dismissed : Russell's Estate, 10 Casey, 258 ; Kinter's Appeal, 12 Sm., 318.

There are some cases which would seem, at first glance, to conflict with this general statement of the law on this subject ; but, when examined closely, I think they will be found to harmonize with it. Of this class of cases is Bishop's Appeal, 2 Casey, 470. LOWRIE, J., in delivering the opinion of the Court, says : The final decrees of the Orphans' Court may be corrected in various forms, depending on the time and the grounds of the application. 1. On mere motion, as to clerical errors and matters that are necessary to make the decree accord with the form that is usual in the kind of case, and that, as the case appeared, and is remembered by the Court, would have been inserted or omitted if it had been suggested to the Court. 2. On petition for a rehearing, setting forth the grounds of the application and verified by oath or affirmation. This applies in cases of decrees by default, and even of decrees on hearing, if applied for during the term, or perhaps after that, if nothing has been done under the decree to prevent it : 12 S. & R., 206. 3. By bill of review, which is a separate suit, founded on error of law appearing on the record, &c. In this case, by the way, although it is stated by the reporter, that the appeal was from the decree of the Orphans' Court in relation to a bill of review, yet that would seem to be an error on his part ; because Judge LOWRIE, in the conclusion of his opinion, says : The petition in the present case is a petition for rehearing after a decree by default, and, presumably, it was presented at the same term, or shortly after.

In McNeel's Estate, 18 Sm., 412, a bill was presented for a review of the executrix's account, setting forth that

she had not produced to the appraisers a large amount of assets which were known to her and were in her possession. The Court below dismissed the bill for the reason that it did not assert any error of law apparent on the face of the record, nor aver the existence of any new matter, nor of any new proof, which might not have been used at the time the decree was passed. The Supreme Court reversed this decision; but the reversal was upon the ground that the omission of nearly two thirds of the estate in the inventory and in the account was a fraud, or its equivalent.

These, and similar cases which I need not refer to, do not contravene the general rule borrowed from chancery practice and said by LEWIS, C. J., in Riddle's Est., 7 Har., 431, to be the first of the ordinances of Lord Chancellor Bacon, that a bill of review can be brought in only two cases. The first is for error in law, apparent on the record, without further examination of matters of fact; and the second is for new matter which hath arisen after the decree. And he adds: A bill of review may also, by special leave, be allowed for new proof that has come to light after the decree, &c. Now, it seems to me, the case presented by the petitioner is not within any of the limitations of this rule. It must be borne in mind that the admissions of fact involved in the demurrer cannot avail the petitioner where, as here, the question is one of jurisdiction. A want of jurisdiction of the subject-matter, it is well said, is an inherent and incurable defect, which cannot be waived by any acquiescence of the parties.

The complaint is that the accountants were allowed excessive commissions, to wit: five per cent. on the whole amount of the inventory, which was $170,861. Among other reasons it is alleged that this was an excessive charge, because the individual indebtedness of the executors, amounting to $57,762 17, is included in the inventory; and because the indebtedness of three other heirs and certain bequests, amounting to $21,227 42, are likewise included, and in regard to which the only trouble the executors had was in the giving and taking of receipts. Another reason assigned is that commissions were charged on three or four thousand dollars in excess of the petitioner's indebtedness; and also on $16,664 18, returned in the inventory, but credit taken for in the account as uncollected and undisposed of assets. These are serious allegations; but they are not matters appearing on the record. The credit of compensation to the executors reads in the account: By allowance to ac-

[Le Moyne's Appeal.]

countants $9,500. It is not stated how the amount of this compensation was arrived at. It must be presumed, in the absence of record evidence to the contrary, that the register, acting in his judicial capacity, made the allowance for what seemed to him to be good and sufficient reasons. As has been held by our Supreme Court in numerous cases, there is, and in the nature of things there can be, no fixed, invariable rule for determining the compensation of trustees. It is a question, in each case, depending upon the quantum of the estate, the time spent, and the trouble, responsibility, and labor incurred in the administration and settlement of the trust. These considerations, we must assume, were all taken into the account and carefully weighed by the register when in view of all the evidence before him he fixed the compensation of these executors; and, therefore, it cannot be said, notwithstanding the admissions of the demurrer, that there is error apparent on the record. It follows, as a necessary sequence, that the petitioner has not presented such a case as entitles him to a review as a matter of right.

Has the Court a legal discretion to grant or refuse the petitioner a rehearing in regard to this item of the account? The decree of confirmation was a decree in default. No exceptions were filed by any of the parties in interest, and under the Court rules its confirmation became absolute, as a matter of course, and without any scrutiny or examination by the judge. In Bishop's Appeal, *supra*, one of the modes in which the Orphans' Court can correct its final decree is, as we have seen, upon petition for a rehearing. . . This applies in cases of decree by default, and even of decree on hearing, if applied for during the term, or perhaps later than that, if nothing has been done under the decree to prevent it. It would seem, then, that under certain circumstances a rehearing may be granted even after the term at which the decree was passed. In an application by a party in default he must not only point out the specific errors complained of, as the act of 1840 requires; but he must go further and account in a satisfactory way for his delay in not excepting to the account at the proper time and in not presenting his application for rehearing at an earlier date; otherwise he must be deemed guilty of such *laches* as will deprive him of the equitable relief, to which he might, under different circumstances, have been entitled.

In the present case the application was not made until more than a year and a half after the decree of confirma-

tion of the account. The petitioner assigns no reason or excuse for this long delay. He simply states that he has learned of the error complained of since the final confirmation of the account. But it is evident from the papers of record in the proceeding that he was of full age at the time. As one of Dr. LeMoyne's sons, he must be presumed to have known that his father had left a large estate and that he himself would eventually be entitled, under the will, to a share in the residuum, after payment of the specific legacies. It must be assumed, therefore, that he kept himself informed as to the progress of the executors in the settlement of the estate, with a view to taking care of his own interests, or, that if he failed to do so, he was guilty of such *laches* as would forfeit his right to invoke the equitable discretion of the Court at this late day.

The mere fact that he is a resident of another State can, I apprehend, make no great difference. He could at any time have ascertained the status of affairs by letters of inquiry, or through a friend or agent. In fact, his means of free and rapid communication with Washington were almost as facile as though it had been a suburb of Chicago. And it is to be observed here, that he does not allege that he had no notice of the filing of this account with the register. In the absence of such averment it must be assumed that he had received such notice. And, further, in the absence of any and all excuse for his delay, which he was bound to render if he had any, it must be assumed that it was delay without excuse. It may have been that he acquiesced at first in the compensation allowed the executors as all the other residuary legatees did, because he was willing they should receive so much, though, perhaps, it was more than the strict rule of law would have entitled them to, or else because he supposed that much was due them by *ex debito justitiae.* In either case, or whatever may have influenced him to be silent for so long a time, he is too late now in starting an objection to the account, after resting in apparent content with it for much the greater part of two years.

The demurrer is sustained and the petition dismissed at the cost of the petitioner.''

The complainant thereupon appealed, assigning for error the action of the Court in sustaining the demurrer and dismissing his petition.

*Dougan & Todd* for appellant.

[Le Moyne's Appeal.]

The appellant has not been guilty of such *laches* as would forfeit his right to invoke the aid of a court of equity : George's Appeal, 2 Jones, 260 ; Mitcheson's Estate, 11 W. N. C., 240 ; McNeel's Estate, 18 Smith, 412.

*Aiken & Duncan* for appellees.

It is well settled that a decree confirming an executor's account can be modified or set aside only in one of three ways, namely ; (1) by motion to correct clerical errors or other matters of form and not of substance ; (2) by a petition for a rehearing, and (3) by bill of review predicated on error apparent on the record or on newly discovered matter : Bishop's Appeal, 26 Pa. St., 470.

If this is to be treated as a move in the original proceeding, and not a matter of right given by the act of 1840, then it is a question within the discretion of the Court below whether it should grant the relief prayed for : Bishop's Appeal, 26 Pa. St., 471 ; Hamill's Appeal, 88 Pa. St., 367.

But treating the petition as a bill of review, filed under the claim of the appellant that he is entitled to the relief prayed for, not as a matter of grace, but as a matter of right, the Court properly sustained the demurrer and turned the petitioner out of court.

The right to such a bill exists only in the two cases in which it was allowed before the passage of the act of 1840, that is to say, (1) for error apparent on the face of the record, and (2) for new matter that has arisen since the decree : Green's Appeal, 59 Pa. St., 238 ; Riddle's Estate, 19 Pa. St., 433 ; Hartman's Appeal, 36 Pa. St., 70 ; and the proceeding is to be governed by the rules that had controlled courts of equity before the passage of the act of 1840 : Russell's Appeal, 34 Pa. St., 258 ; Scott on Intestate Law, 498.

The only questions open on a bill of review for error apparent are such as arise upon the pleadings, proceedings, and decree, and the evidence cannot be looked into ; and if the evidence be set out in the bill, a demurrer should be sustained on that ground alone: 2 Dan. Ch. Pr., (5 Am. ed.,) 1578, note ; *Ibid.*, 1577, note ; Riddle's Estate, 19 Pa. St., 433.

OCTOBER 29, 1883.—PER CURIAM : The application of the appellant was substantially a bill of review. As a matter of right a review can be had in two cases only. One for error apparent on the face of the record, the other for new matter that has arisen since the decree : Green's

[Balt. & Ohio R. R. Co. *v.* Sulphur Sp'g Ind. Sch. Dist. Sewickley tp.]

Appeal, 9 P. F. Smith, 235.    It may be allowed *ex gratia* for new evidence as to facts discovered after decree made, which could not have been procured by the exercise of due diligence before.

No one of these grounds is averred in the petition.    It is not alleged that the accountants should have charged themselves with any item which is omitted from their account filed and confirmed.    The question is purely whether the appellant may now show that they then charged an excessive sum for their services.    Presumably he had notice of the sum charged before the account was confirmed.    He appears to have been satisfied with it. More than a year and a half after the same was filed he made this application to open the decree.    It is true, in his petition he alleges that since the final confirmation of the account he has become aware of gross errors therein ; but he wholly omits to state any reasons why he did not, or could not, by the exercise of reasonable diligence, have discovered all those errors before the account was finally confirmed.    His claim for relief must rest on his averments.    We therefore think the learned judge was clearly right in sustaining the demurrer, and in dismissing the petition.

Decree affirmed and appeal dismissed at the costs of the appellant.